Filed 3/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B311611 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM033875) |
| v. | |
| JESUS MAGANA, | |
| Defendant and Appellant. | |

      APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dabney, Judge. Conditionally affirmed with directions.

      Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

      Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

In 2011 Jesus Magana was convicted of two counts of committing lewd and lascivious acts on a child under the age of 14, and he was sentenced to six years in state prison. Prior to Magana's release, on November 7, 2016 the People filed a petition to commit Magana as a sexually violent predator (SVP) under the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.).[1] At the conclusion of the probable cause hearing, the superior court found there was no probable cause to support the petition. The People appealed, and we reversed, concluding the trial court erred in dismissing the petition for lack of probable cause because "'a reasonable person could entertain a strong suspicion that the offender is an SVP'" based on the experts' opinions Magana suffered from pedophilic disorder. (*People v. Magana* (Apr. 29, 2019, B288123) [nonpub. opn.]).

On remand, the trial court made a finding there was probable cause to believe Magana met the criteria for commitment as an SVP. On the day set for trial, the court provided a minimal advisement to Magana of his right to a jury trial (explaining only that in a court trial the same burden of proof applies), and Magana waived his right to a jury trial. After a seven-day court trial, on March 16, 2021 the trial court found the petition to be true, declared Magana to be an SVP, and committed him to the State Department of State Hospitals for an indeterminate term.

On appeal, Magana urges us to read into the SVPA a requirement that the trial court provide a full jury trial advisement, as required under other civil commitment statutes.

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

In the alternative, Magana contends the trial court violated his right to due process and equal protection by failing to provide him a sufficient advisement of his right to a jury trial as articulated by the Supreme Court in *People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).

In *People v. Washington* (2021) 72 Cal.App.5th 453, 463 (*Washington*) we rejected the argument made by an alleged SVP that we should read into the SVPA a requirement that the trial court provide a full jury trial advisement and take a personal waiver of an alleged SVP's right to a jury trial. We also concluded there was no due process violation. (*Id.* at p. 471.) However, as to the claim that the lack of a full jury trial advisement and waiver violated the defendant's right to equal protection under the federal and California Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7), we remanded for the defendant to raise his claim in the trial court. We observed, "[W]e have difficulty seeing how the dangerousness of an SVP would justify denying an alleged SVP the procedural protections for the right to a jury trial afforded other civil committees, especially given the significant liberty interests at stake for an alleged SVP facing a potential indefinite commitment." (*Washington*, at p. 474.)

As in *Washington*, Magana's equal protection claim likely has merit. We conclude a rational basis review standard applies to Magana's equal protection claim. Even under this deferential standard, the People have not shown a legitimate government purpose to justify differential treatment of SVP's from other civil committees with respect to advisement of an SVP's right to a jury trial and a personal waiver of that right. However, because Magana did not raise his equal protection claim in the trial court,

we remand for Magana to raise his equal protection claim, and upon a showing SVP's and other civil committees are similarly situated as to their right to a jury trial, to provide an opportunity for the People to meet their burden to justify the disparate treatment of SVP's.

We conditionally affirm the order declaring Magana to be an SVP and committing him to the State Department of State Hospitals for an indeterminate term. If the trial court determines there is an equal protection violation, the court shall vacate the order declaring Magana to be an SVP and set the matter for a jury trial, unless Magana provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2021 Magana appeared for trial by videoconference from Coalinga State Hospital, assisted by a Spanish language interpreter. After defense counsel advised the trial court that neither he nor Magana was requesting a jury trial, the court advised Magana as to his right to a jury trial:

"The court: [M]y understanding is that both sides have agreed . . . to try this matter without a jury, and—so it will be a court trial for Mr. Magana's benefit.

In a court trial, the same burden of proof applies as in a jury trial. [The] court would have to be convinced beyond a reasonable doubt [of] the allegations . . . that are in the petition in order to sustain the petition.

4

If the People fail to meet that burden, then the petition would not be sustained, and Mr. Magana would be released. Okay?

So my understanding, Mr. Magana, is that you agree with your attorney to proceed without a jury trial and have this court hear the matter. Is that correct, Mr. Magana?

"[Magana]: Yes. That's correct.

"The court: Okay. Thank you. People join in the jury waiver?

"[Prosecutor]: Yes, your honor.

"[Defense counsel]: And I join as well, your honor.

"The court: Excellent. Thank you."

The trial commenced as a court trial on February 3, 2021. On March 16 the court found the petition to be true and declared Magana to be an SVP. The court committed Magana to the State Department of State Hospitals for an indeterminate term.

Magana timely appealed.

## DISCUSSION

A.     *The SVPA*

"The SVPA authorizes the involuntary civil commitment of a person who has completed a prison term but is found to be a[n] [SVP]." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344.) An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more

5

victims and who has a diagnosed mental disorder that makes the person a danger to the health or safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) "The court must order a trial if there is probable cause, and it must dismiss the petition if there is not." (*State Dept. of State Hospitals,* at p. 346; accord, *People v. Superior Court* (*Vasquez*) (2018) 27 Cal.App.5th 36, 43.)

An alleged SVP is entitled to a jury trial, but only upon a demand by the alleged SVP or the SVP's attorney. Section 6603, subdivision (a), provides, "A person subject to this article is entitled to a trial by jury . . . ." Subdivision (b), in turn, provides, "The attorney petitioning for commitment under this article has the right to demand that the trial be before a jury." Further, "[i]f the person subject to this article or the petitioning attorney does not demand a jury trial, the trial shall be before the court without a jury." (*Id*., subd. (f).) The SVPA does not require the trial court to advise an alleged SVP of the right to a jury trial.

B.     *Standard of Review*

"We review questions of statutory construction de novo. Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.] We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results. [Citation.] If the statutory text is susceptible to more than one reasonable construction, we may consider extrinsic aids such as legislative history to facilitate our interpretative analysis." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041;

6

accord, *People v. Blackburn* (2015) 61 Cal.4th 1113, 1123 (*Blackburn*).)

C.     *Right to a Jury Trial in an SVP Proceeding*

Magana contends the trial court erred by failing to advise him fully of his right to a jury trial, analogizing to the requirements in the statutory schemes for extending the involuntary commitment of a mentally disordered offender (MDO) (Pen. Code, § 2972, subd. (a)(1) & (2)) and for extending the involuntary commitment of a person initially committed after pleading not guilty by reason of insanity (NGI) to a criminal offense (*id.*, § 1026.5, subd. (b)(4) & (5)).  Both the MDO and NGI statutes require the trial court to advise the committee of the right to a jury trial and for the committee to waive that right. (*People v. Tran* (2015) 61 Cal.4th 1160, 1163 (*Tran*) ["The trial court must advise the NGI defendant personally of his or her right to a jury trial and, before holding a bench trial, must obtain a personal waiver of that right from the defendant unless the court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver, in which case defense counsel controls the waiver decision."]; *Blackburn, supra,* 61 Cal.4th at pp. 1120-1122 [MDO statute requires both an advisement of a defendant's right to a jury trial and a personal waiver of that right by the defendant].)

Magana urges us in light of the Supreme Court's decisions in *Blackburn* and *Tran* to interpret the SVPA to require the trial court to obtain a defendant's personal waiver of the right to a jury trial.  However, unlike the MDO and NGI statutes, the SVPA does not require the court to advise the defendant of the right to a jury trial.  We reject Magana's effort to read into the

7

SVPA a requirement that the trial court provide a jury trial advisement to the alleged SVP. As we explained in *Washington, supra*, 72 Cal.App.5th at page 463, after reviewing the language and legislative history of the SVPA and other civil commitment statutes, "unlike the MDO and NGI statutes, the SVPA does not contain language requiring a jury trial advisement or a personal waiver of that right, evincing a legislative intent not to provide these procedural protections."

D.      *The Trial Court's Failure To Provide a Full Advisement to Magana of His Right to a Jury Trial Did Not Violate Due Process*

Magana contends the failure of the trial court to provide a full advisement of his right to a jury trial before taking a waiver of that right violated his due process rights. As we concluded in *Washington, supra*, 72 Cal.App.5th at page 471, there is no due process violation.[2]

In *Washington, supra*, 72 Cal.App.5th at page 471, we analyzed whether the lack of a jury trial advisement and personal waiver was a due process violation by applying the four factors set forth by the Supreme Court in *People v. Otto* (2001) 26 Cal.4th 200, 209-210 (*Otto*). We explained that although there is not a constitutional right in an SVP proceeding to a jury trial, "'[b]ecause civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections.'" (*Washington*, at p. 469, quoting *Otto*, at p. 209.) Further, as the *Otto* court held, "A defendant challenging

---

[2]     The People argue Magana has forfeited his equal protection challenge, but they do not assert forfeiture as to his due process claim.

8

the statute on due process grounds carries a heavy burden. Courts have a "'duty to uphold a statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.'"" (*Otto*, at pp. 209-210; accord, *Washington*, at p. 469.)

The *Otto* court identified four factors for courts to consider in determining what process is due an alleged SVP: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." (*Otto, supra*, 26 Cal.4th at p. 210; accord, *Moore v. Superior Court* (2010) 50 Cal.4th 802, 819; *Washington, supra*, 72 Cal.App.5th at page 469.)

The trial court in *Washington* did not advise the defendant of his right to a jury trial or inquire of him whether he wanted to waive his right to a jury trial, instead relying on a waiver by defense counsel. (*Washington, supra*, 72 Cal.App.5th at p. 461.) Nonetheless, we concluded, after applying the four *Otto* factors, there was no due process violation. (*Id*. at pp. 469-471.) Here, the trial court only advised Magana that the same burden of proof would apply in a court trial that would apply in a jury trial. By not informing Magana of what rights he would be giving up, including that a jury is comprised of 12 members of the

community; an alleged SVP through counsel may participate in jury selection; all 12 jurors must unanimously agree in order to render a verdict; and in a court trial the judge alone will render the verdict (*Sivongxxay, supra*, 3 Cal.5th at p. 169), the court's advisement did not provide Magana with the necessary information to make a meaningful decision whether to waive his right to a jury trial. (See *Sivongxxay*, at p. 166 [criminal jury trial waiver must be knowing in that it was """"made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,""""" and voluntary """in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."""""].)

However, we conclude, as in *Washington*, application of the four factors does not show a due process violation. The first factor—the private interests at stake—weighs in favor of Magana because, as the Supreme Court has observed, "commitment under the [SVPA] affects significant interests, including liberty, reputation, and freedom from unwanted treatment. These interests . . . weigh[] in favor of adopting all reasonable procedures to prevent their erroneous deprivation . . . ." (*Moore v. Superior Court, supra*, 50 Cal.4th at pp. 821-822; see *Washington, supra*, 72 Cal.App.5th at pp. 469-470.)

As to the second factor, we consider whether additional procedural safeguards are necessary to prevent an erroneous deprivation of the defendant's liberty interests in the SVP proceeding. (*Otto, supra*, 26 Cal.4th at p. 210; *Washington, supra*, 72 Cal.App.5th at p. 470.) In *Washington*, we concluded that although the defendant did not personally waive his right to a jury trial, he was present when the court confirmed his attorney had waived his right to a jury trial, and "nothing in the

10

record suggests his attorney did not advise him of his right to a jury trial." (*Washington*, at p. 470; see *Blackburn, supra*, 61 Cal.4th at p. 1124 ["[C]ounsel is presumed to know the defendant's rights and is obligated to advise the defendant accordingly."].) Here, Magana personally waived his right to a jury trial, and there is nothing in the record to suggest defense counsel did not explain to Magana the rights he was giving up.

The third factor of the governmental interest is neutral because, as we observed in *Washington*, "the court's advisement to a defendant of his or her right to a jury trial creates a de minimis burden." (*Washington, supra*, 72 Cal.App.5th at p. 471.) The fourth factor of the alleged SVP's dignitary interest favors the People because, as we held in *Washington*, "trial by the court instead of a jury would not affect a defendant's ability to understand the nature, grounds, and consequences of the commitment proceeding, nor would it prevent him from presenting his case why he should not be committed as an SVP." (*Ibid*.)

We conclude, as we did in *Washington*, in light of Magana's heavy burden to show a due process violation, the lack of a full advisement of Magana's right to a jury trial did not violate his due process rights. (*Washington, supra*, 72 Cal.App.5th at p. 471.)

E.    *We Remand for Magana To Raise His Equal Protection Challenge*
1.    *We decline to find Magana forfeited his equal protection claim*

The People contend Magana forfeited his equal protection claim by not asserting it in the trial court because he bases his

11

claim on Supreme Court authorities that predate his trial.  (See *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [defendant's failure to raise his equal protection claim in the trial court forfeited the argument]; *People v. Rogers*  (2006) 39 Cal.4th 826, 854 [holding as to equal protection and other constitutional claims, "defendant forfeited each of these claims by failing to raise them at trial"]; *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447 ["an equal protection claim may be forfeited if it is raised for the first time on appeal"].)

Magana contends forfeiture does not apply because we first announced the principle in *Washington, supra*, 72 Cal.App.5th at page 474 that the failure of the SVPA to provide the same procedural protections for an alleged SVP's right to a jury trial afforded to other civil committees likely violates equal protection principles.  Magana relies on the Supreme Court's holding in *People v. Perez* (2020) 9 Cal.5th 1, 8, in which the court declined to find the defendant had forfeited a challenge to admission of expert testimony relaying case-specific hearsay that the Supreme Court in *People v. Sanchez* (2016) 63 Cal.4th 665, 670-671 later decided violated the confrontation clause of the Sixth Amendment.  The *Perez* court explained, "'"[W]e have excused a failure to object where to require defense counsel to raise an objection "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal."'" [Citation.]  'In determining whether the significance of a change in the law excuses counsel's failure to object at trial, we consider the "state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial."'"  (*Perez*, at p. 8.)

Although Magana on appeal relies on the Supreme Court's holdings in *People v. McKee* (2010) 47 Cal.4th 1172, 1202 (*McKee I*), *Blackburn*, and *Tran*, all of which predate his trial, our later opinion in *Washington* for the first time specifically addressed an equal protection challenge to the SVPA's lack of a jury trial advisement.  (*Washington*, at p. 474.)

Further, as we observed in *Washington,* in declining to find the defendant had forfeited his equal protection challenge, "'application of the forfeiture rule is not automatic.'" (*Washington, supra*, 72 Cal.App.5th at p. 473, quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293; see *Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 215 ["'neither forfeiture nor application of the forfeiture rule is automatic'"]; see *People v. Nolasco* (2021) 67 Cal.App.5th 209, 217 [exercising discretion to consider equal protection challenge to statute for civil commitment of developmentally disabled individual "because it presents an important question of public concern"].)

We explained in *Washington* that it was not practical for defense counsel, like Magana's attorney here, to raise an equal protection challenge:  "Although Washington's attorney failed to argue that Washington was entitled to a jury trial absent a personal waiver by Washington after a jury trial advisement, it is hard to envision how counsel could have asserted this claim. . . .  The only way Washington could have asserted an equal protection challenge in the trial court would have been for his attorney to request the trial court advise Washington of his right to a jury trial and take a personal waiver of that right. Then, if the court declined to do so based on the absence of a requirement in the SVPA, Washington's attorney could have argued not doing so would violate equal protection principles.

But presumably, Washington's attorney believed Washington wanted to proceed with a court trial (which may or may not have been the case), and thus, counsel would have been unlikely to demand the court advise Washington of his jury trial right and take a personal waiver.  Yet had the civil commitment proceeding been under the MDO or NGI statutes, the court would have been required to advise Washington of his right to a jury trial and to take his personal waiver of that right, to ensure he was aware of and making a knowing, intelligent, and voluntary waiver of that right.  Under these unusual circumstances, we decline to find forfeiture based on Washington's failure to raise an equal protection challenge in the trial court." (*Washington, supra*, 72 Cal.App.5th at pp. 473-474.)

Although Magana personally waived his right to a jury trial, our reasoning in *Washington* applies here.  To raise an equal protection challenge in the trial court, Magana's attorney would have needed to demand a full advisement of Magana's jury trial rights, then asserted an equal protection challenge if the court declined to provide it.  We therefore decline to find Magana forfeited his equal protection challenge.

2.      *Magana has a colorable equal protection challenge*

Magana contends the SVPA's lack of a required advisement of the right to a jury trial violates equal protection principles.  As in *Washington, supra*, 72 Cal.App.5th at page 475, we remand for Magana to have an opportunity to raise an equal protection challenge to the SVPA based on the differential treatment of SVP's.

"The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the

14

law should receive like treatment.  [Citation.]  "'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."  [Citations.]  This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'"  (*People v. Morales* (2016) 63 Cal.4th 399, 408; accord, *McKee I, supra*, 47 Cal.4th at p. 1202); *Washington, supra*, 72 Cal.App.5th at pp. 470-471.)  As the Supreme Court explained in *McKee I*, "we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws."  (*McKee I*, at p. 1202.)

Where classes of persons are similarly situated, "[t]he extent of justification required to survive equal protection scrutiny in a specific context depends on the nature or effect of the classification at issue.  Unequal treatment based on a suspect classification such as race is subject to "'the most exacting scrutiny.'"  [Citation.]  So is treatment affecting a fundamental right.  [Citation.]  . . .  In the high court, certain other classifications, such as gender and illegitimacy, trigger 'intermediate scrutiny' under the federal Constitution."  (*People v. Chatman* (2018) 4 Cal.5th 277, 288.)  Where the challenged law "neither draws a suspect classification nor burdens fundamental rights," "[w]e find a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose."  (*Id.* at pp. 288-289; accord, *People v. Turnage* (2012) 55 Cal.4th 62, 74 ["Where, as here, a

15

statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.'"].)

The People do not dispute Magana's contention SVP's are similarly situated to MDO's and NGI's. (See *McKee I, supra*, 47 Cal.4th at p. 1203 ["MDO's and SVP's are similarly situated for our present purposes."]; *Washington, supra*, 72 Cal.App.5th at p. 473, fn. 8 ["We assume, but do not decide, that SVP's are similar to MDO's and NGI's for purposes of Washington's equal protection challenge, but not civil committees under the LPS Act."].) Therefore, the state "is required to give some justification for this differential treatment." (*McKee I*, at p. 1203.)

At issue in *McKee I* was the provision in the SVPA for the indefinite commitment of SVP's, who had the burden to prove they should be released,[3] whereas MDO's would be committed for a one-year period and were entitled after that period to be released unless the People proved beyond a reasonable doubt the MDO should be recommitted for another year. (*McKee I, supra*, 47 Cal.4th at p. 1202.) The Supreme Court concluded, "There is therefore no question that, after the initial commitment, an SVP is afforded different and less favorable procedural protections than an MDO." (*Ibid*.) The court remanded the case for the trial

_____

[3]  Proposition 83, which was passed by the electorate in 2006, "modified the terms by which [SVP's] can be released from civil commitment under the [SVPA]. In essence, it changes the commitment from a two-year term, renewable only if the People prove to a jury beyond a reasonable doubt that the individual still meets the definition of an SVP, to an indefinite commitment from which the individual can be released if he proves by a preponderance of the evidence that he no longer is an SVP." (*McKee I, supra*, 47 Cal.4th at pp. 1183-1184.)

16

court to determine, applying a strict-scrutiny equal protection analysis, whether the People "can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id.* at pp. 1208-1209, citing *In re Moye* (1978) 22 Cal.3d 457, 465-466 [applying a strict-scrutiny standard of review based on an NGI's "personal liberty" interest to less favorable treatment of NGI's as compared to MDO's with respect to commitment period and burden of proof].)

However, the *McKee I* court cautioned, "[W]e strongly disagree with the concurring and dissenting opinion's characterization of our view as being 'that every detail of every civil commitment program is subject to strict scrutiny.'" (*McKee I, supra*, 47 Cal.4th at p. 1210, fn. 13; see *id.* at p. 1223, conc. & dis. opn. of Chin, J., [noting that "[a] person may have a fundamental interest in his or her liberty," but questioning "whether this fundamental interest extends to all procedures whereby decisions involving personal liberty are made" and observing that "courts from other states that have considered the question have overwhelmingly concluded that strict scrutiny does not apply to equal protection challenges to civil commitment programs"].)

In *People v. Barrett* (2012) 54 Cal.4th 1081, 1094 (*Barrett*), the Supreme Court applied a rational basis standard to review an equal protection challenge to section 6500, which provides for civil commitment of developmentally disabled individuals who pose a danger to themselves or others. (See *id.* at p. 1111, fn. 21 [rejecting "unduly strict standard of scrutiny" and instead applying "the United States Supreme Court's prevailing 'rational basis' standard for analyzing the equal protection claims of

17

mentally [disabled] persons"].)  The defendant in *Barrett* argued the failure of the trial court expressly to advise her of her right to a jury trial and to obtain a personal waiver of that right violated her right to due process and equal protection.  (*Id*. at p. 1089.) The court rejected both challenges, concluding that although the civil commitment statute did not provide for a jury trial advisement and personal waiver, unlike section 5302 of the Lanterman-Petris-Short Act (§ 5000 et seq.; the LPS Act), which applies to an individual suffering from a "mental health disorder" (§ 5150, subd. (a)), the attorney for a developmentally disabled individual may waive the individual's right to a jury trial because the section 6500 commitment process raises substantial doubts about the individual's intellectual functioning and ability to provide a knowing and intelligent jury waiver; by contrast, an individual subject to commitment under the LPS Act does not necessarily lack the ability to understand and make decisions.[4] (*Barrett*, at pp. 1089, 1109.)

As part of its rational basis review, the *Barrett* court explained, "Nothing compels the state 'to choose between attacking every aspect of a problem or not attacking the problem at all.'  [Citation.]  Far from having to 'solve all related ills at once' [citation], the Legislature has 'broad discretion' to proceed

---

[4]     The *Barrett* court found individuals committed under section 6500 were not similarly situated to those committed under the LPS Act for purposes of understanding a jury trial advisement because of the uncertain ability of a developmentally disabled person to comprehend the advisement.  (*Barrett, supra*, 54 Cal.4th at p. 1109.)  However, the court proceeded to address the disparate treatment of individuals committed under section 6500, applying rational basis review to the equal protection challenge.  (*Id*. at pp. 1109-1110 & 1111, fn. 21.)

in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination." (*Barrett, supra*, 54 Cal.4th at p. 1110; see *People v. Nolasco, supra*, 67 Cal.App.5th at p. 225 [applying rational basis review to equal protection challenge to end date of section 6500 commitment term, explaining, "[W]e choose to follow *Barrett*—and hence to apply rational basis scrutiny—because *Barrett* is the most recent pronouncement by our Supreme Court as to the pertinent level of scrutiny to apply when comparing divergent civil commitment procedures"].)

The *McKee I* court did not address whether an equal protection analysis of the lack of a jury waiver advisement in the SVPA is subject to strict scrutiny because of the liberty interests involved (as a result of the indefinite commitment) or is a procedural "detail" subject to the more deferential rational basis review. (See *McKee I, supra*, 47 Cal.4th at p. 1210, fn. 13.) We conclude the rational basis analysis of *Barrett* is more applicable, even though made in the context of the section 6500 commitment statute, because it involves the analogous situation of the lack of a jury trial advisement and personal waiver under a civil commitment statute. Although the indefinite commitment of an alleged SVP affects the individual's fundamental right to liberty, ensuring an alleged SVP has meaningful access to the statutory right to a jury trial, while essential to the exercise of that right, does not affect a fundamental right. (See *People v. Rowell* (2005) 133 Cal.App.4th 447, 451-452 ["Civil commitment proceedings 'are civil in nature and of a character unknown at common law. [Citation.]' [Citation.] 'And, in such civil proceedings, unknown to the common law (as distinguished from ordinary civil and criminal cases), the use of a jury is a matter of legislative grant

19

and not of constitutional right.'"].)[5] But even under the more deferential rational basis standard, the People have not met their burden to show a credible justification for disparate treatment of SVP's with respect to a jury trial advisement.

The People urge us to find they have demonstrated a sufficient justification to support disparate treatment of SVP's with respect to a jury trial advisement based on the findings of the trial court on remand following the Supreme Court's decision in *McKee I, supra*, 47 Cal.4th 1172—that the indefinite commitment of SVP's and their burden to prove they should be released was justified by the danger SVP's pose to society. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1347 (*McKee II*).)

_____

[5] Although the Supreme Court has not directly addressed whether a defendant has a constitutional right to a jury trial in a civil commitment proceeding (see, e.g., *Blackburn, supra*, 61 Cal.4th at page 1120 ["we have not previously addressed whether a mentally disordered offender has a constitutional right to a jury trial in a commitment extension proceeding, and we do not address that question here"]), the Supreme Court has held that other constitutional rights do not apply in SVPA proceedings, including the Fifth Amendment guarantee against compulsory self-incrimination and the Sixth Amendment rights to self-representation and to confront witnesses (*People v. Allen* (2008) 44 Cal.4th 843, 860). And as the Third District explained in *People v. Rowell, supra*, 133 Cal.App.4th at page 451, an SVPA proceeding is not a criminal or civil proceeding for which there was a right to a jury trial at common law when the California Constitution was first adopted in 1850. (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 315 ["'"The right to trial by jury guaranteed by the Constitution is the right as it existed at common law at the time the Constitution was adopted."'"].)

20

After a 21-day evidentiary hearing with expert testimony and documentary evidence on whether the disparate treatment of SVP's could be justified (*McKee II*, at pp. 1330, 1340-1346), the trial court concluded the People met their burden, and the Court of Appeal affirmed, explaining, "We conclude the trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate [in Proposition 83] that SVP's present a substantially greater danger to society than do MDO's or NGI's, and therefore the disparate treatment of SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered." (*Id*. at pp. 1330-1331.)

The People argue that although *McKee II* involved the indeterminate commitment and burden of proof under the SVPA, "the same compelling interests that make those lesser procedural protections necessary also justify the absence of a requirement for a personal waiver of the jury trial right in section 6603." However, as we observed in *Washington, supra*, 72 Cal.App.5th at page 474, "we have difficulty seeing how the dangerousness of an SVP would justify denying an alleged SVP the procedural protections for the right to a jury trial afforded other civil committees, especially given the significant liberty interests at stake for an alleged SVP facing a potential indefinite commitment." The People have not made a persuasive argument how the dangerousness of people found to be SVP's justifies a failure to advise an *alleged* SVP of the right to a jury trial where the person on trial (obviously) has not yet been found to be an SVP.

Alternatively, the People point to section 6600, subdivision (a)(3), which provides that in a jury trial under the

SVPA, "[j]urors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." The People speculate that this provision "reflects legislative awareness that a judge might approach an SVP case more objectively and dispassionately than a jury given the subject matter at issue—a sexually violent offense," providing a justification for disparate treatment of SVP's as to a jury trial advisement. In essence, the People's argument is that because juries might be less objective in hearing SVP trials, the Legislature intended to discourage jury trials by concealing from alleged SVP's their right to a jury trial. We reject this cynical view that the Legislature purposefully tried to limit an alleged SVP's access to a jury trial under even the more deferential rational basis analysis. Had the Legislature wanted to ensure that judges hear SVP trials, it could have simply provided that all SVP trials are to be heard by judicial officers. It did not.

The People contend in the alternative that we should remand this case to the trial court to allow the People an opportunity to demonstrate a constitutional justification for the failure of the SVPA to provide for a jury trial advisement and personal waiver of an alleged SVP's right to a jury trial based on the advisement. We agree remand is appropriate. As we explained in *Washington, supra*, 72 Cal.App.5th at page 473, "Because Washington did not raise an equal protection challenge in the trial court (unlike the defendant in [*McKee I*]), the People were not afforded an opportunity to make a showing as to why alleged SVP's may constitutionally be treated differently from

22

other civil committees with respect to jury waiver protections. Thus, we do not have an appellate record on which to evaluate Washington's equal protection claim."

We recognize that harmless error analysis may apply to the denial of equal protection (see *People v. Garton* (2018) 4 Cal.5th 485, 501), but it does not generally apply to the denial of a defendant's right to a jury trial. As the Supreme Court explained in *Blackburn, supra*, 61 Cal.4th at page 1134 with respect to the failure to require a jury trial advisement and take a personal waiver in MDO commitment proceedings, "The failure to obtain a valid jury trial waiver defies ordinary harmless-error analysis. To speculate about whether a defendant would have chosen a jury trial if he or she had been in a position to make a personal choice would pose insurmountable difficulties, as would an inquiry into what effect, if any, that choice would have had on the outcome of the trial." The court continued, "'[W]here a case improperly is tried to the court rather than to a jury, there is no opportunity meaningfully to assess the outcome that would have ensued in the absence of the error.' [Citation.] Accordingly, we treat a trial court's failure to obtain a required personal jury trial waiver as tantamount to the denial of a jury trial, and as such, it constitutes a 'miscarriage of justice' under article VI, section 13." (*Blackburn*, at p. 1134.) The court concluded "that when a trial court errs in completely denying an MDO defendant the right to a jury trial under [section 2972, subdivision (a)], the error requires automatic reversal." (*Id*. at p. 1136; see *Tran, supra*, 61 Cal.4th at p. 1169 [holding as to trial court's acceptance of NGI defendant's invalid jury trial waiver, "we hold for the reasons set forth in *Blackburn, supra*, 61 Cal.4th at pp. 1132-1137, that such error—resulting in a complete denial of the defendant's right to a

jury trial on the entire cause in a commitment proceeding—is not susceptible to ordinary harmless error analysis and automatically requires reversal."].)

However, "a trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Blackburn, supra*, 61 Cal.4th at p. 1136; accord, *Tran, supra*, 61 Cal.4th at p. 1170.) But "the requirement of an *affirmative* showing means that no valid waiver may be presumed from a silent record." (*Blackburn*, at p. 1136; accord, *Tran*, at p. 1170.) We have a silent record here. Although the trial court advised Magana of the burden of proof in a court trial, the court failed to advise Magana of any of the jury trial rights he would be giving up, including the right to have a trial by a jury of 12 of his peers. And the record is silent as to whether Magana was aware of those rights from his attorney or otherwise. Thus, we cannot determine from the record whether Magana's waiver was knowing and intelligent, nor can we assess whether Magana would have waived his right to a jury trial had he known of the rights he was waiving. Accordingly, if on remand the trial court finds there was an equal protection violation, it must vacate the order declaring Magana to be an SVP and set the matter for a jury trial, unless Magana provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.

We conditionally affirm the order declaring Magana to be an SVP and committing him to the State Department of State Hospitals for an indeterminate term. However, as in *McKee I, supra*, 47 Cal.4th at pages 1208 to 1209, we remand for Magana

24

to have an opportunity to raise an equal protection challenge to the SVPA based on the differential treatment of SVP's in that, unlike other civil committees, the statute does not provide for a personal advisement of the alleged SVP's right to a jury trial. If Magana meets his burden on remand to show SVP's and other civil committees are similarly situated as to jury trial protections, the People must demonstrate a "*rational* relationship between a disparity in treatment and some legitimate government purpose." (*Chatman, supra,* 4 Cal.5th at pp. 288-289.)

**DISPOSITION**

The order declaring Magana to be an SVP and committing him to the California Department of State Hospitals for an indeterminate term is conditionally affirmed. We remand for Magana to have an opportunity to raise an equal protection challenge to the SVPA's jury waiver provisions. If the trial court determines there is an equal protection violation, the court shall vacate the order declaring Magana to be an SVP and set the matter for a jury trial, unless Magana provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.

FEUER, J.

We concur:

PERLUSS, P. J.

WISE, J.*

---

*      Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.